**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

TAMMIE S.,

|                       | Plaintiff,     | 3:18-CV-174 |
|                       |                | (CFH)       |

      v.

NANCY A. BERRYHILL, ACTING
COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
_____

**APPEARANCES:**                          **OF COUNSEL:**

Lachman, Gorton Law Firm            PETER A. GORTON, ESQ.
P.O. Box 89
1500 East Main Street
Endicott, New York 13761-0089
Attorneys for plaintiff

Social Security Administration        HEETANO SHAMSOONDAR, ESQ.
Office of Regional General Counsel,
Region II
26 Federal Plaza, Rm. 3904
New York, New York 10278
Attorneys for Defendant

**CHRISTIAN F. HUMMEL,**
**U.S. MAGISTRATE JUDGE**

### MEMORANDUM-DECISION & ORDER[1]

    Plaintiff Tammie Rae S. brings this action pursuant to 42 U.S.C. § 405(g)

seeking review of a decision by the Commissioner of Social Security ("Commissioner"

_____

[1]    Parties consented to review of this matter by a Magistrate Judge pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, N.D.N.Y. Local Rule 72.2(b), and General Order 18.  See Dkt. No. 8.

or "defendant") denying her applications for supplemental security income benefits ("SSI") and disability insurance benefits.  Dkt. No. 1 ("Compl.").  Plaintiff moves for a finding of disability, and the Commissioner cross moves for a judgment on the pleadings.  Dkt. Nos. 15, 21.  Plaintiff filed a reply with permission of the Court.  Dkt. Nos. 22, 23.  For the following reasons, the determination of the Commissioner is reversed, plaintiff's motion for judgment on the pleadings is granted, and the matter is remanded.

## I. Background

On September 23, 2014, plaintiff, who was born on June 6, 1969, filed a Title II application for a period of disability and disability insurance benefits and protectively filed a Title XVI application for supplemental security income.  T[2] at 162-72. Plaintiff alleged disability beginning on March 30, 2009.  Id. at 167.  These applications were denied initially on December 4, 2014.  Id. at 92-97.  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") on January 8, 2015, and a hearing was held before ALJ Gretchen Mary Greisler on February 2, 2017.  Id. at 98, 8-23.  The ALJ determined that plaintiff was not disabled.  Id. at 8-23.  Plaintiff's timely request for review by the Appeals Council was denied, making the ALJ's findings the final determination of the Commissioner.  Id. at 1-5.  Plaintiff commenced this action on February 12, 2018.  Dkt. No. 1 ("Compl.").

---

[2]  References to "T" refer to the administrative transcript.  Dkt. No. 9.

## II. Discussion

## A.  Standard of Review

In reviewing a final decision of the Commissioner, a district court may not determine de novo whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence.  See Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987); Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982).  Substantial evidence is "more than a mere scintilla," meaning that in the record one can find "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal citations omitted)).  The substantial evidence standard is "a very deferential standard of review . . . . [This] means once an ALJ finds facts, we can reject [them] only if a reasonable factfinder would *have to conclude* otherwise." Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (emphasis in original)(internal quotation marks omitted). Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence.  See Martone v. Apfel, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987)).  However, if the correct legal standards were applied and the ALJ's finding is supported by supported by substantial evidence, such finding must be

3

sustained, "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citation omitted); Venio v. Barnhart, 213 F.3d 578, 586 (2d Cir. 2002).

## B.  Determination of Disability[3]

"Every individual who is under a disability shall be entitled to a disability . . . benefit . . . ." 42 U.S.C. § 423(a)(1).  Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." Id. § 423(d)(1)(A).  A medically-determinable impairment is an affliction that is so severe that it renders an individual unable to continue with his or her previous work or any other employment that may be available to him or her based upon age, education, and work experience.  Id. § 423(d)(2)(A).  Such an impairment must be supported by "medically acceptable clinical and laboratory diagnostic techniques." Id. § 423(d)(3).  Additionally, the severity of the impairment is "based [upon] objective medical facts, diagnoses or medical opinions inferable from [the] facts, subjective complaints of pain or disability, and educational background, age, and work experience." Ventura v. Barnhart, No. 04-CV-9018 (NRB), 2006 WL 399458,

---

[3]  Although the SSI program has special economic eligibility requirements, the requirements for establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3)(SSI) and Title II, 42 U.S.C. § 423(d) (Social Security Disability Insurance ("SSDI")), are identical, so that "decisions under these sections are cited interchangeably." Donato v. Sec'y of Health and Human Services, 721 F.2d 414, 418 n.3 (2d Cir. 1983) (citation omitted).

at *3 (S.D.N.Y. Feb. 21, 2006) (citing <u>Mongeur v. Heckler</u>, 722 F.2d 1033, 1037 (2d Cir. 1983)).

The Second Circuit employs a five-step analysis, based on 20 C.F.R. § 404.1520, to determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.
>
> If he [or she] is not, the [Commissioner] next considers whether the claimant has a 'severe impairment' which significantly limits his [or her] physical or mental ability to do basic work activities.
>
> If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a 'listed' impairment is unable to perform substantial gainful activity.
>
> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work.
>
> Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

<u>Berry</u>, 675 F.2d at 467 (spacing added). The plaintiff bears the initial burden of proof to establish each of the first four steps. <u>See</u> <u>DeChirico v. Callahan</u>,134 F.3d 1177, 1179-80 (2d Cir. 1998) (citing <u>Berry</u>, 675 F.2d at 467). If the inquiry progresses to the fifth step, the burden shifts to the Commissioner to prove that the plaintiff is still able to engage in gainful employment somewhere. <u>Id.</u> at 1180 (citing <u>Berry</u>, 675 F.2d at 467).

5

"In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision." Barringer v. Comm'r of Soc. Sec., 358 F. Supp. 2d 67, 72 (N.D.N.Y. 2005) (citing Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984)). However, a court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. See Yancey v. Apfel, 145 F.3d 106, 111 (2d Cir. 1998). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). The Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

### C. ALJ Decision

Applying the five-step disability sequential evaluation, the ALJ determined that plaintiff had not engaged in substantial gainful activity since March 30, 2009, the alleged onset date. T at 13. The ALJ found at step two that plaintiff had the severe impairments of obesity, hip bursitis, lumbar spondylosis without myelopathy, migraines without aura, depression, and anxiety. Id. At step three, the ALJ determined that

plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Id. at 14-15. Before reaching step four, the ALJ concluded that,

> claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can occasionally stoop[,] crouch, kneel, and climb stairs and ramps. She can never crawl or climb ladders, ropes, or scaffolds. She can tolerate no more than moderate levels of noise as defined in Appendix D of the Selected Characteristics of Occupations. 1993 Edition. She should avoid work outdoors in bright sunshine and cannot work with bright or flickering lights such as would be experienced in welding or cutting metals. She can perform simple, routine and repetitive tasks in a work environment free of fast paced production requirements and involving only simple work-related decisions and few, if any, workplace changes.

Id. at 15. At step four, the ALJ determined that plaintiff was unable to perform past relevant work. Id. at 18. Considering plaintiff's RFC, age, education, and work experience, together with the Medical-Vocational Guidelines, the ALJ further concluded that there are jobs that exist in significant numbers in the national economy that plaintiff could perform. Id. The ALJ obtained testimony from a vocational expert who testified that plaintiff would be able to perform the jobs of callout operator, marker, and ticket seller. Id. at 19. Pursuant to SSR 00-04, the ALJ "determined that the vocational expert testimony is consistent with the information contained in the Dictionary of Occupational Titles." Id. Thus, the ALJ determined that plaintiff has not been under a disability within the meaning of the Social Security Act from the alleged onset date to the date of the decision. Id. at 19-20.

## D.  Arguments

First, plaintiff argues that Appeals Council erred insofar as it failed to consider new and material evidence submitted post-hearing – a May 25, 2017 medical source statement from Dr. Aamir Rasheed and a June 2017 deposition of Gary Dean, MD. Dkt. No. 15 at 9.[4]  Second, plaintiff contends that the Appeals Council's failure to consider the new evidence "deprived [her] of the opportunity to have this new evidence considered under [the] treating physician rule."  Id. at 13.  Third, plaintiff argues that because a portion of the transcript of the Vocational Expert's ("VE") testimony was recorded as "inaudible," she was deprived of due process because the transcript does not permit meaningful or informed review.  Id. at 18.  Fourth, plaintiff asserts that the ALJ's step two severity determination was not supported by substantial evidence because the ALJ relied on an "old criteria" in concluding that plaintiff's fibromyalgia was not severe.  Id. at 19.  Fifth, plaintiff contends that the ALJ's residual functional capacity ("RFC") assessment is not supported by substantial evidence because (1) consultative examiner Dr. Jenouri's opinion does not constitute substantial evidence in support of the RFC, (2) the ALJ reached an RFC without support from a medial opinion, (3) the ALJ improperly relies on plaintiff's activities of daily living, and (4) the ALJ erroneously concludes that plaintiff is noncompliant with her disease management and diet plans. Id. at 26.  Sixth, plaintiff argues that the step five determination is not supported by substantial evidence because the ALJ relied on the VE's testimony which "was based

---

[4]  References to page numbers in the parties briefs refer to the pagination generated by the Court's electronic filing system, CM/ECF, located at the header of each page.

on a faulty hypothetical." Id. at 27.

Defendant argues that the Appeals Council properly assessed the new evidence and did not err in concluding that it did not relate to the period at issue. Dkt. No. 21 at 4. Next, defendant contends that plaintiff was not deprived of due process because the small, inaudible portion of the VE's testimony "relates only to a hypothetical limitation that was inconsistent with the ALJ's RFC finding" and because "the vocational expert testimony with regard to the ALJ's RFC finding was transcribed in the administrative record." Id. Defendant thus contends that any error with regard to the transcript is harmless because the inaudible portion related to off-task limitations, and the ALJ concluded that plaintiff did not have any off-task limitations. Id. Next, the defendant contends that the ALJ properly concluded that plaintiff's fibromyalgia was not severe at step two because plaintiff failed to meet her burden of showing that the fibromyalgia imposed any functional limitations. Id. at 11-12.

Defendant contends that the ALJ's RFC is supported by substantial evidence as it properly considered consultative examiner Gilbert Jenouri, MD's opinion and accorded it great weight, and because the ALJ's RFC was also supported by the record as a whole. Defendant rejects plaintiff's argument that the ALJ's RFC is not supported by a medical opinion, arguing that it is supported by the opinions of consultative examiner Dr. Jenouri and consultative psychologist Dr. Sara Long. T at 14. Next, defendant argues that the ALJ did not err in considering plaintiff's ADLs as the ALJ is required to consider such activities and because plaintiff's ADLs "were one of many considerations in reaching the RFC finding for a range of light work." Id. at 15.

Additionally, defendant argues that the ALJ properly considered Dr. Dean's treatment notes indicating that plaintiff is not compliant with her treatment goals and diet plans as several of Dr. Dean's treatment notes reflected such findings, and it was appropriate for the ALJ to consider this medical opinion evidence. Id. Finally, defendant argues that the ALJ's step five finding was supported by substantial evidence as the ALJ was not required to present additional limitations to the VE because the ALJ reasonably concluded that plaintiff failed to establish those limitations. Id. Accordingly, defendant argues that the ALJ's decision should be affirmed.

### E. Analysis

### 1. Appeals Council Review

### a. New Evidence

Parties dispute whether the Appeals Council properly concluded that plaintiff's new evidence – a questionnaire from Dr. Rasheed dated May 25, 2017, and a deposition of Dr. Dean dated June 22, 2017 – did not relate to the period at issue, ending on April 6, 2017. Plaintiff argues that the fact that the questionnaire and depositions are dated after the ALJ's hearing decision does not mean that they are inapplicable to the period at issue, contending, "the time between the ALJ's decision and the new evidence is quite short, which supports the conclusion that the new evidence reasonably reflected Plaintiff's condition on or before the ALJ's decision." Dkt. No. 15 at 11. Further, plaintiff argues that the Appeals Council's decision fails to state why it did not relate to the period at issue, and it is inappropriate "ad hoc rationalization"

to assume that the Appeals Council rejected the evidence as not related to the period at issue merely because the new evidence did not explicitly state as such.  Dkt. No. 22-1 at 1; Dkt. No. 15 at 10.  Further, plaintiff insists that the Appeals Council cannot conclude that the new evidence is irrelevant solely because it does not explicitly state that it relates to the relevant time period.  Dkt. No. 15 at 11.

Defendant argues that courts in this Circuit "have held that a retrospective opinion must clearly refer to the relevant period of disability."  Dkt. No. 21 at 9.  As Dr. Rasheed and Dr. Dean's opinions are dated after the relevant period and "neither clearly refer to the relevant period," defendant contends that the ALJ did not err in declining to conclude that the records were meant to be retrospective.  Id. at 10. Defendant also argues that the record "does not contain any records from Dr. Rasheed and it is unclear whether the doctor treated Plaintiff prior to the ALJ's hearing decision." Id.  Thus, defendant contends that because plaintiff did not meet her burden of demonstrating that the new evidence "clearly referred to the relevant period," the Appeals Council did not err in concluding that the records did not relate to the relevant period.  Id.

"[N]ew evidence submitted to the Appeals Council following the ALJ's decision becomes part of the administrative record for judicial review when the Appeals Council denies review of the ALJ's decision."  Lesterhuis v. Colvin, 805 F.3d 83, 87 (2d Cir. 2015) (quoting Perez v. Chater, 77 F.3d 41, 45 (2d Cir. 1996)).  In reviewing the ALJ's denial of disability insurance benefits, the Appeals Council considers "new and material" evidence as long as it "relates to the period on or before the date of the hearing

decision, and there is a reasonable probability that the additional evidence would

change the outcome of the decision."  20 C.F.R. § 404.970(b); see Perez, 77 F.3d at 45

("The only limitations stated in [20 C.F.R. § 416.1470(b)] are that the evidence must be

new and material and that it must relate to the period on or before the ALJ's decision.").

> As the Second Circuit set forth in Perez:

> A request for Appeals Council review of an ALJ's decision is
> the fourth and final stage in the administrative process of
> adjudicating claims for benefits under the Social Security
> Act. Social Security regulations expressly authorize a
> claimant to submit new and material evidence to the
> Appeals Council when requesting review of an ALJ's
> decision.  20 C.F.R. §§ 404.970(b), 416.1470(b). If the new
> evidence relates to a period before the ALJ's decision, the
> Appeals Council "shall evaluate the entire record including
> the new and material evidence submitted . . . [and] then
> review the case if it finds that the administrative law judge's
> action, findings, or conclusion is contrary to the weight of the
> evidence currently of record."  § 404.970(b); see also §
> 416.1470(b).  When the Appeals Council grants review, the
> decision of the Appeals Council is the final decision of the
> [Commissioner].  See 20 C.F.R. §§ 404.981, 416.1481.
> However, if the Appeals Council denies review, the ALJ's
> decision becomes the [Commissioner's] final decision.  See
> §§ 404.981, 416.1481. The final decision of the
> [Commissioner] is subject to judicial review. 42 U.S.C. §
> 405(g).

Id.; see also Barimah v. Comm'r, Soc. Sec. Admin., No. CIVACV01-7160(DGT), 2004

WL 2216497, at *3 (E.D.N.Y. Sept. 27, 2004) ("When the Appeals Council denies

review of the ALJ's decision, the new evidence submitted to the Appeals Council

becomes the part of administrative record for judicial review. The court reviews the

entire administrative record, including the new evidence, and determines whether there

is substantial evidence to support the Commissioner's decision.") (internal citations

omitted).

Further, it is well-established that "[t]he role of the district court is to determine if the Appeals Council erred when it determined that the new evidence was insufficient to trigger review of the ALJ's decision." Allborty v. Comm'r of Soc. Sec., No. 6:14-CV-1428 (DNH/ATB), 2016 WL 770261, at *8 (N.D.N.Y. Jan. 28, 2016), report and recommendation adopted sub nom. Allborty v. Colvin, No. 6:14-CV-1428, 2016 WL 796071 (N.D.N.Y. Feb. 22, 2016) (citation omitted) (emphasis added). Thus, "the issue before the Court is whether the new evidence altered the weight of the evidence before the ALJ so dramatically as to require the [Appeals Council] to take the case." Canady v. Comm'r of Soc. Sec., No. 1:17-CV-0367 (GTS/WBC), 2017 WL 5496071, at *11 (N.D.N.Y. Oct. 4, 2017), report and recommendation adopted 2017 WL 5484663 (N.D.N.Y. Nov. 14, 2017); see Bushey v. Colvin, 552 F. App'x 97, 98 (2d Cir. 2014) (summary order) ("We do not believe that the Appeals Council erred by refusing to review the ALJ's decision in light of the new evidence that Bushey submitted to that body. The Appeals Council had substantial evidence supporting its decision to decline review, as the new evidence that Bushey presented did not alter the weight of the evidence so dramatically as to require the Appeals Council to take the case.").

The Appeals Council denial stated:

> You submitted medcial evidence from Gary Dean, MD dated
> June 22, 2018 (11 pages) and Aamir Rasheed, MD dated
> May 25, 2017 (5 pages). The Administrative Law Judge
> decided your case through April 6, 2017. This additional
> evidence does not relate to the period at issue. Therefore, it
> does not affect the decision about whether you were
> disabled beginning on or before April 6, 2017. If you want
> us to consider whether you were disabled after April 6, 2017,

13

you need to apply again.

T at 2.

Plaintiff cites Pollard v. Hater, 377 F.3d 183, 193 (2d Cir. 2004), to argue that medical opinions or documents generated after the relevant period cannot be deemed irrelevant solely because of their timing, and that it may provide additional support that the condition existed during the relevant period.  Dkt. No. 15 at 11.  In Pollard, the Second Circuit remanded after concluding that the Appeals Council erred in finding the new evidence to be immaterial because it "did not explicitly refer to the relevant time period." 377 F.3d at 193.  Defendant provides that "courts in the Second Circuit have held that a retrospective opinion must clearly refer to the relevant period of disability." Dkt. No. 21 at 9 (citing Vitale v. Apfel, 49 F. Supp. 2d 137, 142 (E.D.N.Y. 1999) and Pulos v. Comm'r of Soc. Sec'y, 346 F. Supp.3d 352, 362 (W.D.N.Y. 2018)). However, Vitale was issued before Pollard, and, further, Vitale involved distinguishable facts – a plaintiff "seek[ing] disability benefits for a past term of disability."  Id. at 143.  Further, defendants cite Pulos merely for the general proposition that evidence relating to a claimant's functioning at a later time but is not relevant to the period at issue does not need to be considered by the Appeals Council.  Id.

 "While a court should not 'categorically refuse[ ] to consider' evidence simply because it does not explicitly relate to a plaintiff's condition during the relevant time period, such evidence must be of a type that "may disclose the severity and continuity of [existing] impairments . . . or may identify additional impairments which could reasonably be presumed to have been present."  Pollard, 377 F.3d at 194 (citation

14

omitted); see also Pearson v. Astrue, 1:10-CV-521(MAD), 2012 WL 527675, at *11 (N.D.N.Y. Feb. 17, 2012) ("Materiality requires that the new evidence not concern a later-acquired disability or the subsequent deterioration of the previous non-disabling condition." (citation and internal quotation marks omitted))"; Ovitt v. Colvin, No. 1:12-CV-01522, 2014 WL 1806995, at *4 (N.D.N.Y. May 7, 2014).

Here, although the Appeals Council may not reject evidence solely because it is dated after the ALJ hearing decision and does not explicitly indicate that it relates to the period at issue, the Court cannot conclude, as plaintiff urges, that the Appeals Council should have found Dr. Rasheed's May 25, 2017, questionnaire to relate to the period at issue. Although the questionnaire is dated just seven weeks after the ALJ hearing decision, it is not clear from the record that it is meant to be retroactive. Indeed, the record states that plaintiff has noted "an increase in frequency" since her last visit, suggesting a change in her pattern of headaches. T at 73. There is no indication in the record that this change occurred during the relevant time period. Id. Thus, plaintiff has not met her burden of demonstrating that the May 25, 2017, questionnaire relates to the period at issue. Accordingly, the undersigned finds the Appeals Council made no error in declining to consider this record.

As to Dr. Dean's June 22, 2017, deposition, the Court finds otherwise. As defendant notes, the deposition does not explicitly state that it is retrospective nor does it "clearly refer to the relevant period." Dkt. No. 21 at 10. However, review of the deposition suggests it may apply to the relevant period. Armstead ex rel. Villanueva v. Astrue, No. 1:04-CV-503, 2008 WL 4517813, at *17 (N.D.N.Y. Sept. 30, 2008) (noting

that the Appeals Council erred in declining to consider medical evidence as "there is a basis for concluding that Dr. Burky's report is 'new evidence because Dr. Burky copiously recounted Victor's illness, psychiatric history, social and developmental history, and medical history . . . rendered his diagnoses based both on Victor's history and present behavior . . . Therefore, this evidence was relevant to the claimant's condition during the time period for which benefits were denied.") (internal citation and quotation marks omitted).  Unlike Dr. Rasheed's questionnaire, Dr. Dean's deposition testimony provides no indication of a worsening or change in the status of plaintiff's diagnoses to suggest that it is relevant only to the post-hearing time period.  The Court acknowledges that it is a claimant's burden to demonstrate that the evidence relates to the period at issue; however, in the specific facts of this case, the deposition evidence was taken close in time to the ALJ's hearing decision -- approximately two months later – and comes from a treating provider with a clear longitudinal history of treatment, all of which suggests the evidence relates to the relevant period.  Cf. Guerra v. Comm'r of Soc. Sec., No. 1:16-CV-00991 (MAT), 2018 WL 3751292, at *8 (W.D.N.Y. Aug. 7, 2018) (determining that Appeals Council did not err in declining to consider post-hearing evidence where the records were from two months after the ALJ's decision, there was no evidence of a longitudinal treatment relationship between the claimant and the provider, and the "Plaintiff has not identified any information in her physicians' notes from after the relevant time period that demonstrates limitations greater than those found by the ALJ.").

    In his deposition, Dr. Dean indicates that he started treating plaintiff fifteen years

ago.  T at 62-63.  Dr. Dean explained how he diagnosed plaintiff with fibromyalgia –

"diffuse pain not clearly able to be caused by any obvious other medical opinion."  Id. at

63. Dr. Dean states that plaintiff has been "suffering from this for several years and is

on medication for this."  Id.  Dr. Dean also indicates that plaintiff suffers from

depression, for which she takes Wellbutin [sic]" but that the medication "does not get

her feeling normal."  Id. at 64.  Further, Dr. Dean discussed that plaintiff's fibromyalgia

could lead to depression, and, conversely, depression "does make physical pain

worse."  Id. at 64-65.  Dr. Dean also explained that plaintiff's obesity would not

necessarily impact her fibromyalgia, but "clearly has impact on the chronic back pain[.]"

Id. at 65.  He concluded that plaintiff "suffers from significant pain that interferes with

her daily activity.  Her ability to function."  Id. at 65.  Dr. Dean further concluded that

plaintiff's fatigue "makes it difficult to stay on task, concentrate, and accomplish even

simple tasks.  Add to that the depression, it will be very difficult for her to function on a

basis of maintaining focus in a, we'll say job setting."  Id.  He indicated that "on a better

day," plaintiff "might be able to stay on task for a short period of time but I doubt she'd

be able to sustain it for hours[,]" and the most she could stay on task on a good day

would be "around" fifteen percent of the day.  Id. at 68.  Dr. Dean also stated that

plaintiff's chronic back pain and fibromyalgia "would have a severe impact on any ability

to maintain pace in a work environment."  Id. at 66.  Dr. Dean explained that plaintiff's

conditions "would wax and wane on a daily basis but she would never be without pain

or fatigue."  Id. at 66-67.  Further, Dr. Dean indicated that plaintiff's conditions would

cause her to be absent "more than once a week."  Id. at 67.

As Dr. Dean's testimony discussing plaintiff's conditions may "clarify a pre-hearing disability or diagnoses," it should not have been "deemed irrelevant solely because of timing." Hunt v. Comm'r of Soc. Sec., No. 16-CV-610-FPG, 2018 WL 4356494, at *3 (W.D.N.Y. Sept. 13, 2018) (citing Carrera v. Colvin, No. 1:13-cv-1414 (GLS/ESH), 2015 WL 1126014, at *8 (N.D.N.Y. Mar. 12, 2015)) (additional internal citation omitted). Further, as Dr. Dean explains the impact plaintiff's conditions have on her ability to focus and stay on task in an employment environment, there is a "reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(b). Indeed, as plaintiff provides, "this case contains an absence of medical opinions on the issues of work pace and/or attendance caused by Plaintiff's physical (as opposed to mental) impairments. The only opinion of record to assess Plaintiff's physical impairments is from the consultative medical examiner, Dr. Jenouri, but he offered no opinion whatsoever on the issues of work pace and/or attendance." Dkt. No. 15 at 15. Thus, the Court finds that the Appeals Council erred by failing to consider Dr. Dean's deposition testimony because it post-dated the ALJ's hearing decision. Accordingly, the Court remands to the Appeals Council for reconsideration in light of the new evidence. Id. (quoting McIntire v. Astrue, 809 F. Supp. 2d 13, 21 (D. Conn. 2010) (citing Milano v. Apfel, 98 F. Supp. 2d 209, 216 (D. Conn. 2000) ("If the Appeals Council fails to consider new and material evidence, 'the proper course for the reviewing court is to remand for reconsideration in light of the new evidence.'").

### b. Treating Physician's Rule

Plaintiff argues that because the Appeals Council found that the new evidence did not relate to the relevant time period, it "engaged in no analysis of the weight to be given to these opinions." Dkt. No. 15 at 14. Thus, plaintiff contends she "was deprived of the opportunity to have this new evidence considered under the treating physician rule." Id. at 13. Plaintiff argues that the Appeals Council's failure to give controlling weight to Dr. Rasheed and Dr. Dean's opinions without explaining its reasons comprehensively is ground for remand. Id. In a footnote, defendant contends that plaintiff's argument "must fail because the Appeals Council will only consider the new evidence where it is shown to relate to the relevant period, which Plaintiff has not done." Dkt. No. 21 at 10 n.3.

Because the Court finds that the Appeals Council erred in rejecting Dr. Dean's post-hearing deposition testimony because it was dated after the relevant time period, remand is necessary for the Appeals Council to weigh this opinion. Thus, on remand, the Appeals Council must consider Dr. Dean's opinion under the treating physician rule. However, as the Court found there was no error in the Appeals Council's assessment of Dr. Rasheed's questionnaire, remand is not warranted for this opinion. Accordingly, on remand, the Appeals Council is to consider Dr. Dean's post-hearing deposition testimony and provide "good reasons" for the weight it accords to this new evidence.

### 2. Vocational Expert Transcript

Plaintiff argues that she was deprived of due process because a portion of the

VE's testimony was deemed inaudible, resulting in it not being transcribed. Dkt. No. 15 at 18. Plaintiff argues that this inaudible portion related to a "crucial" response concerning employer tolerance for time off task. Dkt. No. 15 at 18. Defendant contends that the inaudible portion "relates only to a hypothetical limitation that was inconsistent with the ALJ's RFC finding" and that "the vocational expert testimony with regard to the ALJ's RFC finding was transcribed in the administrative record." Dkt. No. 21 at 11. Defendant contends that the inaudible portion is "immaterial and any error is harmless because the ALJ did not find Plaintiff had any off-task limitations." Id.

Here, the Court finds that the inaudible portion of the VE's testimony does not deprive plaintiff of due process and does not warrant remand. Although a small portion of the VE's testimony was recorded in the transcript as inaudible, T at 54, because this testimony related to a hypothetical on which the ALJ did not rely, the inability to transcribe the VE's response to this question is harmless error. Although the Court may have found otherwise if the inaudible portion related to the hypothetical the ALJ relied on, because the ALJ did not find limitations relevant to the question posted, the lack of the answer in the record is not prejudicial. Indeed, although the transcript omits as inaudible the VE's response to the amount of time off task that would be tolerated by employers, the majority of the VE's answer relating to number of absences tolerated by an employer is discernable. Id. at 54. As the Court finds that any error relating to the inaudible portion of the transcript of the VE's testimony is harmless, remand is not required on this ground.

### 3. Step Two Finding

Plaintiff contends that the ALJ erred in declining to find her fibromyalgia to be a severe impairment. Dkt. No. 15 at 19. Plaintiff argues that the ALJ relied on outdated criteria for diagnosing fibromyalgia, requiring a number of positive tender points when updated criteria no longer relies on those tender points. Id. at 20. Plaintiff contends that the record demonstrates her fibromyalgia diagnosis under the "new" criteria as the record shows the existence of widespread pain, "repeated manifestations of six or more FM signs, symptoms, or co-occurring conditions," and "other disorders have been ruled out." Id. at 20-21. Plaintiff argues that the ALJ's error at step two is prejudicial because the ALJ does not include any functional limitations accounting for plaintiff's fibromyalgia in reaching the RFC. Id. at 21.

Defendant argues that the ALJ properly found the fibromyalgia to be nonsevere as "the record did not support any functional limitation imposed by fibromyalgia." Dkt. No. 21 at 12. Further, defendant argues that plaintiff "makes no attempt to show functional limitations caused by her fibromyalgia" and "relies in part on the new evidence submitted by Dr. Dean." Id. Finally, defendant argues that, because the ALJ proceeded past step two by finding other impairments to be severe, any error in failing to find fibromyalgia to be severe would be harmless. Id.

The claimant bears the burden of presenting evidence establishing severity at step two of the disability analysis. Briggs v. Astrue, 09-CV-1422, 2011 WL 2669476, at *3 (N.D.N.Y. Mar. 4, 2011) adopted, 2011 WL 2669463 (N.D.N.Y. July 7, 2011). A severe impairment is one that significantly limits the claimant's physical or mental ability

to perform basic work activities. 20 C.F.R. § 404.1520(c); <u>see also</u> 20 C.F.R. § 404.1521(a) (noting that an impairment is not severe at step two if it does not significantly limit a claimant's ability to complete basic work activities). As this Court has laid out,

> The Regulations define "basic work activities" as the "abilities and aptitudes necessary to do most jobs," examples of which include the following: (1) physical functions such as walking, standing, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) using judgment; (5) responding appropriately to supervision, co-workers and usual work situations; and (6) dealing with changes in a routine work setting. 20 C.F.R. § 404. 1521(b). "Severity" is determined by the limitations imposed by an impairment, and not merely its by diagnosis. The mere presence or diagnosis of a disease or impairment is not, by itself, sufficient to deem a condition severe. <u>Hamilton v. Astrue</u>, 12-CV-6291, 2013 WL 5474210, at *10 (W.D.N.Y. Sept. 30, 2013).
>
> An ALJ should make a finding of " 'not severe' . . . if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'" <u>Rosario v. Apfel</u>, 97-CV-5759, 1999 WL 294727, at *5 (E.D.N.Y. Mar. 19, 1999). Although an impairment may not be severe by itself, the ALJ must also consider "the possibility of several such impairments combining to produce a severe impairment . . . ." SSR 85-28, 1985 WL 56856, at *3. The Second Circuit has held that the step two analysis "may do no more than screen out de minimis claims." Dixon v. Shalala, 54 F.3d 1019, 1030 (2d Cir. 1995). If the disability claim rises above a de minimis level, then the ALJ must undertake the remaining analysis of the claim at step three through step five. Dixon, 54 F.3d at 1030.

<u>Warthan v. Comm'r of Soc. Sec.</u>, No. 7:16-CV-0036 (GTS), 2017 WL 79975, at *6 (N.D.N.Y. Jan. 9, 2017).

Fibromyalgia can be diagnosed in two ways.  The first criteria for diagnosis is: (1) a "history of widespread pain – that is, pain in all quadrants of the body (the right and left sides of the body, both above and below the waist) and axial skeletal pain (the cervical spine, anterior chest, thoracic spine, or low back)–that has persisted . . . for at least 3 months" and (2) "[a]t least 11 positive tender points on physical examination . . . found bilaterally (on the left and right sides of the body) and both above and below the waist" and (3) "[e]vidence that other disorders that could cause the symptoms or signs were excluded." SSR 12-2p, 2012 WL 3104869, at *2-3.  The second criteria seeks (1) "[a] history of widespread pain," (2) "[r]epeated manifestations of six or more [fibromyalgia] symptoms, signs, or co-occurring conditions, especially manifestations of fatigue, cognitive or memory problems ("fibro fog"), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome," and (3) "[e]vidence that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring conditions were excluded." Id. at *3.  "Section II.B. of SSR 12-2p does not require 11 of 18 tender points for a diagnosis of fibromyalgia." Durodye v. Comm'r of Soc. Sec'y, 6:16-CV-1467 (CFH), 2018 WL 144421, at *7 (N.D.N.Y. Mar. 20, 2018).

In making her severity determination about plaintiff's fibromyalgia, ALJ Greisler noted "there are no diagnostic tests or clinical findings" to support the diagnosis and "the record contains no evidence of the required number of tender points for fibromyalgia."  T at 14.  Further, the ALJ concluded "the record includes no evidence to support any functional restrictions that have been imposed based on any of these conditions.  With no evidence from a medically acceptable source to establish any

impairment related to these condition, they are not medically-determinable impairments." Id. at 17. Thus, the ALJ appears to have both questioned the diagnosis of fibromyalgia as well as whether it caused more than minimal functional limitations. Id.

Although the ALJ erroneously suggested that claimant needed the required number of tender points to be diagnosed with fibromyalgia, this error is harmless as the ALJ's conclusion that there was a lack of medical expert evidence suggesting that the fibromyalgia caused limitations is supported by substantial evidence. Indeed, a diagnosis of fibromyalgia, without more, does not suffice for an ALJ to conclude that the condition is severe. Rivers v. Astrue, 280 F. App'x 20, 22 (2d Cir. 2008) (summary order) (concluding that a "mere diagnosis of fibromyalgia without a finding as to the severity of symptoms and limitations does not mandate a finding of disability."); SSR 12-2p, 2012 WL 3017612, at *2 ("We cannot rely upon the physician's diagnosis alone.").

Thus, although the ALJ erred in relying on tender points for a fibromyalgia diagnosis, the ALJ properly concluded that in the record before her, there was no evidence of any functional limitations relating to the fibromyalgia. In finding that the record does not support functional limitations from fibromyalgia, the ALJ cites to one record from Dr. Dean, referencing plaintiff's complaint of pain in her back and hips, and that plaintiff was being seen for a follow up for fibromyalgia with no changes in the condition, but "worsened back pain" and "worsened diffuse tenderness." T at 238; T at 14 (citing Exh. 1F at 3). Although there is no explicit discussion of tender points, the

records do mention tenderness and soreness as well as fatigue.  Id. at 243, 245, 241

(tenderness left and right trochanteric bursa area); 240 (gradual onset of moderate

bilateral and bilateral hip pain, excessive daytime sleepiness), 239 (pain w straight leg

lifts, pain on palpation of lateral tract bilaterally), pain over entire neck (251), hip pain

(254), tenderness over both trochanteric bursas (256).  Despite this mention of

tenderness in his medical treatment notes, it is unclear if Dr. Dean was attributing

plaintiff's complaints of pain to the fibromyalgia or to other sources.  Indeed, the records

also indicate a motor vehicle accident as being a source of neck pain, and suggest

obesity contributes to the pain, as well as spondyloisis in her back and hip bursitis.  T at

338.  However, the ALJ correctly noted that the record did not set forth any limitations

due to plaintiff's fibromyalgia.  Nowhere in Dr. Dean's records is there an indication that

plaintiff's fibromyalgia meant she was unable to engage in certain physical tasks nor

does he set forth limitations on her physical activity.  In fact, many of Dr. Dean's

treatment records suggest that plaintiff's reported lifestyle, which did not include

exercise, was contrary to the doctor's recommendations for plaintiff.

The only other medical evidence addressing fibromyalgia in the record before the

ALJ was from Consultative Examiner Gilbert Jenouri, MD.  Dr. Jenouri performed an

internal medicine examination, noting plaintiff's complaints of fibromyalgia, which

plaintiff described as "an aching pain with an intensity of 9 to 10/10.  Principally

affecting her hips." T at 277.  Dr. Jenouri observed that "trigger points for fibromyalgia

were bilateral shoulders and bilateral knees."  Id. at 279.  Dr. Jenouri also concluded

that plaintiff had "mild to moderate restrictions walking, standing, sitting long periods,

25

bending, stair climbing, lifting, and carrying." Id. at 280. The ALJ reasonably relied on this consultative examination to conclude that plaintiff's fibromyalgia did not cause significant functional limitations.

Although the Court finds that the ALJ did not commit error at step two in concluding plaintiff's fibromyalgia was non-severe, because the new evidence – Dr. Dean's deposition testimony – may change the ALJ's opinion regarding whether plaintiff's fibromyalgia was a severe impairment and/or her opinion about the effect of this impairment at subsequent steps in the sequential evaluation, the Appeals Council must review this testimony and assess whether it necessarily impacts the ALJ's finding as to plaintiff's fibromyalgia. See generally Smith v. Colvin, 3:12-CV-1665 (FJS/ATB), 2014 WL 98676, at *8-9 (N.D.N.Y. Jan. 9, 2014) (holding that, where the ALJ concluded that the claimant's fibromyalgia was not severe at step two because the ALJ found the claimant did not have required tender points, and the claimant submitted the physician's deposition to the Appeals Council, which "tested plaintiff according to the proper standard" for fibromyalgia, the Court found that the Appeals Council erred in failing to "articulate a basis for rejecting [the doctor's] clarification" of the treating physician's opinion because, had this information been before the ALJ, the ALJ "may have changed his opinion about whether fibromyalgia was a severe impairment, as well as its impact at other steps in the sequential evaluation."). Accordingly, on remand, the Appeals Council is to consider what, if any, impact Dr. Dean's deposition testimony has on the ALJ's step two conclusion as it relates to fibromyalgia, and explain its reasoning.

### 4. Residual Functional Capacity

Plaintiff argues that the ALJ erred in reaching her RFC because she did not rely on any medical evidence; instead, she "determine[d] functional limitations based on [her] lay interpretation of bare medical records." Dkt. No. 15 at 24. Plaintiff contends that the only medical evidence as to plaintiff's physical functional limitations[5] came from Dr. Jenouri, who "did not specify his opinion in any objective terms. There is no medical opinion stating Plaintiff's functional limitations in objective terms. It is, thus, unclear how the ALJ concludes Plaintiff can meet the exertional demands of light work." Id. Further, plaintiff argues that Dr. Jenouri "makes numerous examination findings inconsistent with 'mild' or 'moderate,' including complaints of fibromyalgia, generalized joint pain, aching pain principally affecting her hips, and continued bilateral hip pain precipitated with activity, squat limited to 30%, numerous musculoskeletal limitations, and positive SLR." Dkt. No. 22-1 at 3. Defendant argues that the ALJ reasonably relied on Dr. Jenouri's opinion in assessing plaintiff's functional limitations, as his findings are based on "his detailed examination findings" and review of X-rays. Dkt. No. 21 at 13. Moreover, defendant asserts that the ALJ's RFC "was supported by Dr. Jenouri's findings as well as the ALJ's consideration of the record as a whole, and was not based solely on Dr. Jenouri's assessment of mild-to-moderate limitations." Id.

As the Court finds that the RFC analysis may be impacted by consideration of

---

[5] Interestingly, in this section of her brief, plaintiff appears to concede that there was no discussion of functional limitations in the record from any medical professional other than Dr. Jenouri; yet, conflictingly, in the prior section she appears to argue that the record contained functional limitations with respect to plaintiff's fibromyalgia. Cf. Dkt. No. 15 at 20, 21, with Dkt. No. 15 at 24.

Dr. Dean's deposition testimony, remand is required to assess whether this new evidence impacts the ALJ's RFC analysis. However, the Court concludes that the ALJ did not reach an RFC that was unsupported by medical opinion. Although in the medical records before the ALJ, Dr. Dean diagnosed plaintiff with fibromyalgia, his records did not set forth functional limitations due to this diagnosis. The ALJ reasonably concluded that plaintiff's fibromyalgia caused no more than mild-to-moderate limitations based on Dr. Jenouri's medical opinion, which was based on his medical examination, and plaintiff's normal hip x-rays. T at 279-80. Although plaintiff argues that Dr. Jenouri's conclusion was vague, as "Dr. Jenouri did not objectively quantify what he meant by 'mild to moderate,'" Dr. Jenouri's medical examination supports such a finding. Dr. Jenouri noted that plaintiff had normal gait and stance; could walk on her heels and toes without difficulty; could rise from a chair without difficulty; had full range of motion in her elbows, wrists, hands, knees, and ankles, though limited range of motion in her lumbar and cervical spine; stable and nontender joints; normal deep tendon reflexes; full strength (5 out of 5); in-tact hand and finger dexterity; and full grip strength. T at 280.

Plaintiff cites <u>Selian v. Astrue</u>, where the Court remanded when the ALJ concluded that the claimant could lift ten to twenty pounds based solely on one doctor's "remarkably vague" opinion that the claimant could lift "objects of a mild degree of weight on an intermittent basis." 708 F.3d 409, 421 (2d Cir. 2013). Here, however, the ALJ does not make a similar "remarkably vague" assessment; instead, she relies on the findings of the consultative examiner which were supported by his examination. <u>See</u>

Stacy D. v. Comm'r of Soc. Sec., 3:17-CV-1011 (ATB), 2019 WL 416146, at *12 n.19

(N.D.N.Y. Feb. 1, 2019) (citing Schmitt v. Commissioner of Social Sec., 5:11-CV-796

(LEK/ATB), 2012 WL 4853506, at *9 (N.D.N.Y. July 24, 2012) ("in relying on the opinion

of a consulting examiner that the plaintiff, inter alia, had no gross limitation sitting,

standing, or walking, the ALJ made an appropriate function-by-function RFC supported

by substantial evidence"), Report-Recommendation approved by 2012 WL 4853067

(N.D.N.Y. Oct 11, 2012); Heburn v. Astrue, 6:05-CV-1429 (LEK/DEP), 2009 WL

174941, at *8 (N.D.N.Y. Jan. 23, 2009) ("the ALJ's RFC determination draws support

from the findings of a consulting examiner who, notwithstanding his diagnoses that

plaintiff suffers from fibromyalgia, nonetheless opined that plaintiff has only a mild

degree of limitation in lifting, carrying, pushing, and pulling, with no gross limitation

noted in sitting, standing, walking, climbing, or bending").   As pointed out by defendant,

an ALJ is "'entitled to weigh all of the evidence available to make [a residual functional

capacity] finding that was consistent with the record as a whole."  Dkt. No. 32 at 14;

Johnson v. Colvin, 669 F. App'x 44, 47 (2d Cir. 2016) (summary order) (citing Matta v.

Astrue, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order)).  To the extent plaintiff may

be suggesting that the ALJ erred insofar as the RFC assessment lacked a function-by-

function analysis, it is clear that "the Second Circuit has held that the failure to explicitly

engage in a function-by-function analysis as part of the RFC assessment does not

constitute a per se error requiring remand."  Cutillo v. Comm'r of Soc. Sec'y, 5:17-CV-

609 (MAD/WBC), 2018 WL 4635704, at *10 (N.D.N.Y. May 4, 2018) (citing Chichocki v.

Astrue, 729 F.3d 172, 174 (2d Cir. 2013)); see also Schmitt, 2012 WL 4853506, at *9 .

In formulating his RFC, the ALJ thoroughly detailed the medical records, including the medical opinions of both treating sources and consultative examiners, as well as plaintiff's own reports.

Accordingly, the Court finds that the ALJ did not err in her assessment of plaintiff's RFC. However, as the Court must remand to the Appeals Council for consideration of Dr. Dean's new evidence, the Appeals Council should assess whether the new evidence impacts the ALJ's RFC assessment.

### 5. Activities of Daily Living

Plaintiff next contends that the ALJ improperly "use[d] Plaintiff's activities against him [sic]" in concluding that her ADLs were "not as limited to the extent one would expect, given the complaints of disabling symptoms and limitations." Dkt. No. 15 at 25. Plaintiff argues that "there is no evidence that Plaintiff performed any activities to the extent consistent with full time work." Id. Instead, the ALJ "cites to activities [plaintiff] performs only once or twice per week and that clearly do not take eight hours to do each day." Id. Plaintiff also takes issue with the ALJ's conclusion that plaintiff's ADLs "'require many of the same functions that the claimant alleges she is unable to perform in a work setting,' but the ALJ does not specify what those functions are," and "[n]one of these functions are inconsistent with inability to maintain the required levels of work pace and/or work attendance." Id. Defendant argues that the ALJ "reasonably considered that Plaintiff's activities of daily living were inconsistent with her allegations of disability," and that the ALJ "need not show that the activities alone support the RFC

finding; rather, Plaintiff's activities of daily living were one of many considerations in reaching the RFC finding for light work." Dkt. No. 21 at 15.

"A claimant's participation in the activities of daily living will not rebut his or her subjective statements of pain or impairment unless there is proof that the claimant engaged in those activities for sustained periods of time comparable to those required to hold a sedentary job." Vernon v. Colvin, No. 15-CV-6387-CJS, 2016 WL 5661971, at *5 (W.D.N.Y. Oct. 3, 2016) (quoting Polidoro v. Apfel, No. 98 Civ. 2071 (RPP), 1999 WL 203350 (S.D.N.Y. 1999), and citing Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 643 (2d Cir. 1983)). In assessing a claimant's RFC, an ALJ must consider "all of the relevant medical and other evidence," including a claimant's subjective complaints of pain. Id. § 416.945(a)(3). An ALJ's RFC must be supported by substantial evidence in the record. 42 U.S.C. § 405(g). If it is so supported, that determination is conclusive and must be affirmed on judicial review. See id.; Perez, 77 F.3d at 46. Further, "[i]t is the function of the [Commissioner], not [the reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of the witnesses, including the claimant." Aponte v. Sec'y, Dep't Health and Human Servs., 728 F. 2d 588, 591 (2d Cir. 1984) (citation omitted). A court must defer to an ALJ's finding and uphold the ALJ's decision to discount a claimant's subjective complaints if the finding is supported by substantial evidence. Id. at 591 (citations omitted).

The Court finds the ALJ did not commit reversible error in her consideration of plaintiff's ADLs. The ALJ considered plaintiff's reported ADLs, accurately listed the frequency at which plaintiff alleged engaging in those activities, but concluded that the

level of activity for her reported ADLs would "require many of the same functions that the claimant alleges she is unable to perform in a work setting and are inconsistent with the claimant's testimony that she spends 10-15 days per month laying in bed." Dkt. No. 9 at 20. That the ALJ considered that plaintiff was able to cook twice per week, clean once per week, do laundry once per week, shop twice per week, and care for her young granddaughter, "of whom she has sole custody," is not improper. Id. The ALJ did not determine that plaintiff was capable of performing sustained work activity based solely on her testimony of activities of daily living. Instead, the ALJ noted inconsistencies between these reported ADLs and plaintiff's claims of extremely disabling symptoms that would unlikely permit even the level of activity plaintiff reported. T at 17.

This is not a situation where an ALJ considers a claimant's very minimal activity and distills that into an ability to perform full-time work on a sustained basis; rather, the ALJ explained how plaintiff's reported ADLs – including cleaning, laundry, cooking one to two times per week, and regular childcare of a toddler for whom she has sole custody – conflict with her very limiting claims that she spends approximately a third of each month in bed. Cf. Harris v. Colvin, 149 F. Supp. 3d 435, 445 (W.D.N.Y. 2016); Miller v. Colvin, 122 F. Supp. 3d 23, 29 (W.D.N.Y. 2015) ("The ALJ did not explain how the performance of these limited activities of daily living translates into the ability to perform substantial gainful work at all exertional levels in a typical competitive workplace environment."). Further, the ADLs were one factor the ALJ considered in assessing plaintiff's complaints of pain and credibility as the ALJ also considered the medical records from Dr. Dean and from consultative examiner Dr. Jenouri. In sum, the ALJ

properly considered plaintiff's ADLs and assessed them in combination with the other record evidence.  See generally Conners v. Comm'r of Soc. Sec., 6:16-CV-0943 (WBC), 2017 WL 6453320, at *9 (N.D.N.Y. Dec. 15, 2017).  Thus, plaintiff's argument as to the ALJ's assessment of plaintiff's ADLs does not provide ground for remand.

### 6. Noncompliance with Disease Management/Diet

Plaintiff argues the ALJ erroneously "took out of context" a "sole record" from Dr. Dean which stated plaintiff "is not complaint with her disease management goals and diet plans" to support a finding that plaintiff's "symptoms may not have been as limiting as she has alleged."  Dkt. No. 15 at 26.  Plaintiff contends that this medical record "is limited only to Plaintiff's eating habits and not her compliance with treatment for her FM and other impairments."  Dkt. No. 15 at 26.  Thus, plaintiff argues that the ALJ's reliance on this record to suggest plaintiff's symptoms are less severe than alleged is "a far overstatement."  Id.  Defendant argues that the ALJ properly relied on this treatment note and contends that Dr. Dean's notes 'indicated that Plaintiff was not doing well with goals on several occasions."  Dkt. No. 21 at 15.  Further, defendant provides, "it was well within the purview of the ALJ to consider Plaintiff's treatment and other factors in considering Plaintiff's subjective statements."  Dkt. No. 21 at 15.  The Court agrees with defendant.

Although the ALJ cited to essentially one record in support of her finding that plaintiff's symptoms may not be as severe as alleged, defendant correctly notes that there are multiple occasions where the same provider, Dr. Dean, indicates that plaintiff

33

is not in compliance with treatment goals that extend beyond her diet. Although the ALJ references one record, as defendant cites, "[a]n ALJ does not have to state on the record every reason justifying a decision . . . . An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." Dk. No. 21 at 15; Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotation marks and citations omitted). In reaching her conclusion, the ALJ cites Exh 1F at 3 and 2F at 15. Although the record speaks of plaintiff's non-adherence to her recommended diet, it is not entirely clear that Dr. Dean, in stating that plaintiff is not "doing well with her goals," intended to limit that conclusion solely to plaintiff's diet goals. T at 238. Other references in Dr. Dean's medical treatment notes indicate plaintiff is not doing well with her other treatment goals, including a record dated just one month after the medical record the ALJ cites. Id. at 240. This record explicitly states that plaintiff "is not adherent to her medication regimen and she denies medication side effects." Id. Another of Dr. Dean's treatment records also refers to a lack of compliance that extends beyond diet insofar as plaintiff indicated that she was "not checking blood sugars at home," and "not doing well with her diabetes goals." T at 328, 333, 338.

Further, the ALJ does not rely entirely on this record or records in reaching her conclusion as to the severity of plaintiff's pain. The ALJ also references the fact that her medical provider denied her a prescription of Percocet she requested, the results of plaintiff's physical consultative examination, and her reported activities of daily living. T at 16-17. Accordingly, as the Court finds the ALJ did not commit reversible err in her assessment of these medical records and her conclusions drawn from them, remand is

34

not required on this basis.

### 7.  Step Five Determination

Plaintiff argues that the step five determination is not based on substantial evidence "because it is based on the testimony of a vocational expert whose testimony was based on a faulty hypothetical." Dkt. No. 15 at 27.  Plaintiff contends the VE was not given the full extent of her impairments, and, thus, the VE's testimony does not amount to substantial evidence to support the ALJ's finding.  Id. Defendant asserts that plaintiff's argument "is merely a rehashing of the argument that Plaintiff's RFC was deficient because it did not incorporate additional limitations that the ALJ reasonably found that Plaintiff failed to establish." Dkt. No. 21 at 16.

Here, the Court finds that the ALJ did not err in her step five finding.  Although plaintiff disagrees with the ALJ's RFC, and, thus, with the hypotheticals she presented to the VE as plaintiff believes they did not include all of plaintiff's limitations, because the Court has concluded that the ALJ's RFC is based on substantial evidence – to the extent challenged by plaintiff – the Court finds that the ALJ did not err in failing to incorporate additional limitations before the VE.  Athough the Court finds the ALJ did not err in her step five finding, because the Court finds that the Appeals Council erred in failing to consider the new evidence – Dr. Dean's deposition testimony – the Appeals Council is to consider any impact the new evidence may have on the ALJ's step five finding.

### III. Conclusion

**WHEREFORE**, for the reasons stated herein, it is hereby

**ORDERED**, that plaintiff's Motion for Judgment on the Pleadings, Dkt. No. 15, is **GRANTED**; and it is further **ORDERED**, that defendant's Motion for Judgement on the Pleadings, Dkt. No. 21, is **DENIED**, and the matter is **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g), to the Commissioner for further proceedings consistent with this Memorandum-Decision and Order.

**IT IS SO ORDERED**.

Dated: February 22, 2019
Albany, New York

Christian F. Hummel
U.S. Magistrate Judge